IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TOBIAS JAMIE YOUNG,

    Petitioner,

v.                       Civil Action No. 3:16CV221

HAROLD W. CLARKE,

    Respondent.



### MEMORANDUM OPINION

Tobias Jamie Young, a Virginia state prisoner proceeding with counsel, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1). Young was convicted in the Circuit Court of the City of Richmond of murder, attempted robbery, and use of a firearm. (Mem. Supp. Mot. Dismiss Ex. 7, "State Habeas Opinion," ECF No. 5-7.) In his § 2254 Petition, Young contends that:

Claim A   "Counsel failed to request a jury instruction that prior inconsistent statements of witnesses are not substantive evidence. Counsel failed to ask for the instruction at the time the evidence was presented as well as before the jury deliberation.[1]" (§ 2254 Pet. 13 (emphasis omitted).)

Claim B   "Counsel failed to request voir dire of Daquan Kelson outside of the presence of the jury at the moment the Commonwealth attempted to impeach the witness with grand jury testimony after Kelson testified at trial that he was not present when the shooting took place. As the facts were presented, Kelson offered no substantive evidence

---

[1] For ease of reference, the Court refers to the omitted instructions as the Inconsistent Statement Instruction.

which was probative of any material fact relating to the charges against the Petitioner, and Kelson's testimony would have been excluded as either wholly irrelevant or because the prejudicial effect greatly outweighed the probative value, if any, of Kelson's testimony.

Counsel compounded this error by failing to object and argue that the impeachment evidence was not substantive evidence, as similarly alleged in Ground A . . . ."

(Id. at 28 (emphasis omitted).)

Respondent has moved to dismiss. For the reasons set forth below, the Motion to Dismiss (ECF No. 4) will be granted.

## I. Applicable Constraints Upon Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

2

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)). Given the foregoing constraints, the findings by the Virginia courts figure prominently in this Court's Memorandum Opinion.

## II.  Procedural History

On July 27, 2009, Quian Huang, a delivery driver for a restaurant, was shot and killed. State Habeas Op. 2 (citation omitted). Following a jury trial, where he was represented by Attorney David Lassiter, Young was convicted of the murder of Huang, attempted robbery, and use of a firearm in the commission of a felony. Id. at 1.

Young unsuccessfully appealed his convictions. The Court of Appeals of Virginia aptly summarized the evidence of Young's guilt as follows:

> [A]t approximately midnight on July 27, 2009, Quian Huang, a delivery driver for a restaurant, was

3

shot once in the forehead and died from the gunshot wound. Investigators found one shell casing near Huang's body.

Jasmine Kirkland attended school with [Young], knew him for approximately six years, and considered him to be her best friend. They regularly spoke on the phone, and during a conversation in August 2009, [Young] told Kirkland that he had something important to tell her. Later, Kirkland saw [Young] and she asked him where his new shoes were. Kirkland testified [Young] replied he shot a deliveryman and he threw away the shoes after the shooting, Kirkland testified she asked if he was serious and [Young] replied, "Yeah, I'm serious. I shot him. I shot the Chinese deliveryman."

Daquan Kelson, [Young's] cousin and a Commonwealth witness, testified at trial that he was not in the area at the time of the shooting and Kelson refused to read the transcript of his earlier testimony before a grand jury. The transcript of Kelson's grand jury testimony showed that Kelson testified before the grand jury that someone said to rob Huang, and Kelson told [Young] not to take part in the robbery. Before the grand jury, Kelson testified [Young] pointed the firearm at Huang's head and the firearm discharged when Huang reached for it. Kelson asserted at trial that the transcript of his grand jury testimony was incorrect.

Devaugh Brown testified he was in the area and he saw [Young] run past him just after hearing a gunshot. Brown's trial testimony differed from his testimony before the grand jury, and the grand jury transcript showed that Brown testified there that he saw [Young] with a black firearm and he saw [Young] tuck "something black" into his pants. Before the grand jury, Brown testified that a few days after the shooting, he saw appellant with a black handgun. Brown asserted at trial that the transcript of his grand jury testimony was incorrect.

Jermaine Washington, a defense witness, testified he was in the vicinity of the shooting, he saw Reginald Lee with a small handgun and he heard gunshots. Washington testified he did not see [Young] in the area. Washington admitted he first spoke with [Young's] attorney the day before [Young's] trial.

[Young] testified he heard a gunshot while playing baseketball and he later walked by the scene

4

after he finished playing basketball. [Young] denied shooting Huang and said that Brown was mistaken when Brown testified he saw [Young] with a firearm. [Young] testified he had a falling out with Kirkland [when] they were still in high school. [Young] admitted he wrote two letters to Kirkland while incarcerated for these crimes that stated she was still his best friend despite the things she was saying about him. [Young] denied telling Kirkland that he shot the Chinese food delivery person.

State Habeas Op. (all alterations, except third to last in original) (quoting Young v. Commonwealth, No. 1586-10-2, at 2-3 (Va. Ct. App. Jan. 11, 2011)).

On August 8, 2012, Young, with counsel, filed a petition for a writ of habeas corpus with the Circuit Court wherein he raised his two present grounds for relief. Id. at 2. The Circuit Court conducted an evidentiary hearing on the claims and ultimately denied the petition for a writ of habeas corpus. Id. at 10. The Court recites the pertinent portions of that opinion infra Part III.B, in conjunction with its analysis of Claims A and B. Young petitioned the Supreme Court of Virginia for an appeal. The Supreme Court of Virginia refused the Petition for Appeal. (ECF No. 5-9.)

### III. Analysis

#### A. Ineffective Assistance Of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's

5

representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

B.    Claim A

Here, the Circuit Court made the following findings in dismissing Claim A:

> In Ground A, Young alleges his attorney denied him effective assistance of counsel by failing to request a jury instruction that prior inconsistent statements of witnesses are not substantive evidence.
> Dequan Kelson testified before the grand jury that he was present with Young at the scene of the murder, that he advised Young not to rob the victim,

6

he saw Young point a firearm at the victim's head and the firearm "went off" when the victim tried to reach for it.    Trial Tr. at 114-22.    At trial, however, Kelson denied being present at the murder and refused, when offered, to look at the transcript of his testimony before the grand jury.  Id. at 107, 110.  As the Commonwealth read portions of Kelson's testimony from the transcript and asked whether Kelson recalled making each of the statements, Kelson testified he did not recall the testimony.    Id. at 113-16.    Young argues the prejudicial effect of the waiver of an instruction on "prior inconsistent statements" is that Kelson's   grand   jury   testimony   was   considered substantive evidence, offered for the truth, by the jury, as well as by the appellate court bound by the law of the case.  See Young v. Commonwealth, No. 1586-10-2, slip op. at 2-3 (Va. Ct. App. Jan. 11, 2011 (per curiam).

The   Virginia   model   jury   instruction   on   prior inconsistent statements reads as follows:

> If you believe from the evidence that a
> witness      [other      than      the      defendant]
> previously   made   a   statement   inconsistent
> with his testimony at this trial, the only
> purpose  for  which  that  statement  may  be
> considered by you is for its bearing on the
> witness's credibility.  It is not evidence
> that what the witness previously said is
> true.

Virginia Model Jury Instruction - Criminal Instruction No. 2.560.

The   model   jury   instruction   reflects   both statutory   and   common   law.   A   witness's   prior inconsistent statement, if offered for the truth of the matter asserted, is inadmissible hearsay.    See Gray v. Rhoads, 268 Va. 81, 89-90 (2004) ("[A] prior inconsistent   statement   used   to   impeach   a   witness's present testimony . . . is never admissible to prove the truth of the statement's content.").    Upon the request of a party, the court is required to include the   jury   instruction   and   failure   to   do   so   is reversible error.    See Va. Code § 8.01-403 ("In every such case the court, if requested by either party, shall instruct the jury not to consider the evidence of   such   inconsistent   statements,   except   for   the

7

purpose of contradicting the witness."); Va. Sup. Ct. R. 2:105 ("[T]he court upon motion shall restrict such evidence to its proper scope and instruct the jury accordingly.").

The Virginia Supreme Court has made it equally clear, however, that a party may waive the prior inconsistent statement jury instruction. See Hall v. Commonwealth, 233 Va. 369, 374 (1987) ("The opposing party may, of course, waive the benefit of a cautionary instruction if he so chooses."). If inadmissible evidence is admitted without objection and counsel does not request a curing instruction, the omission of the instruction is not reversible on direct appeal. Largin v. Commonwealth, 215 Va. 318 (1974).

The Strickland Court cautioned, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689. The court must give a "strong presumption" to counsel's conduct as reasonable trial strategy. Id. The court may not, however, "conjure up a tactical decision an attorney could have made, but plainly did not." United States v. Luck, 611 F.3d 183, 188. Virginia courts follow the "reasonable competence standard" in evaluating claims of ineffective assistance of counsel. Stokes v. Warden, Powhatan Correctional Center, 226 Va. 111, 116-17 (1983) ("We now hold, therefore, that the constitutional guarantee of the assistance of counsel includes the right to the care and skill which a reasonably competent attorney would exercise for similar services under the circumstances.").

It is undisputed that defense counsel failed to request a jury instruction on prior inconsistent statements. Trial Tr. 230-31 Mar. 18, 2010. However, based on the colloquy between the trial judge and defense counsel concerning the jury instruction, a competent attorney might reasonably decline to request the instruction for strategic reasons. Id. at 229-231. Thus, it was not error "so serious that counsel was not functioning as 'counsel'", Strickland, 466 U.S. at 687, to fail to request the jury instruction, and, therefore, Ground A of the petition should be denied.

In Stokes, the Supreme Court of Virginia held that trial counsel did not meet the reasonable competence standard where he failed to object to an instruction which the Supreme Court of the United

8

States had found unconstitutional seven months earlier. 226 Va. at 118. The facts here do not allow for such a straightforward analysis.

At the conclusion of the evidence, the trial court entertained a defense motion to include a jury instruction on the lesser charge of manslaughter. The basis for the instruction was Kelson's grand jury testimony that the victim had grabbed for the gun and it "went off." Defense counsel argued that since the jury had heard the possibility that the killing may have been involuntary, they should be so instructed. During the course of these arguments, the court inquired whether the parties were offering the "standard instruction on prior inconsistent statement." The court then observed:

> I don't see, from looking through my notes, I don't see anything that was admitted as substantive evidence that would support a lesser included. But if you all are not giving that instruction and you are giving what the witness previously said was substantive, then I will give the lesser included.

Trial Tr. at 230. The Commonwealth responded it was not giving the instruction and argued the law typically does not allow for prior inconsistent statements to constitute substantive evidence. The trial transcript contains the following exchange:

> THE COURT: That is correct. The law is that a defendant's prior inconsistent statement can be admitted as substantive evidence, but a witness' prior statement relates only to witness credibility.
> Mr. Lassiter, is it your position that the witness' prior inconsistent statement is admitted as substantive evidence?
>
> MR. LASSITER: I don't have a comment on it. I will let the Court.
>
> THE COURT: All right. The Court will deny the instruction and we will follow the law. A witness' prior inconsistent statement is not substantive evidence and consistent with

> those cases that the Supreme Court has
> handed down.
>
> The Court is denying the request for the
> lesser included, because the standard is
> there must be a scintilla of evidence to
> support an instruction. **And obviously, a
> question to a witness is not evidence.
> There is not factual basis for the question
> and prior inconsistent statement is not
> substantive evidence.**

(Trial Tr. at 230-31 (emphasis added) (alterations in
original).

State Habeas Op. 4-7(alterations in original) (punctuation
corrected).

Ultimately, the Circuit Court concluded that counsel did
not perform deficiently because the failure to request the
standard instruction about inconsistent statements was part of a
reasonable trial strategy.

> When asked, defense counsel deferred to the court
> on the question of whether he believed any of Kelson's
> prior inconsistent statements had been admitted as
> substantive evidence. Id. at 231. The question arose
> because Kelson refused to look at the transcript of
> his grand jury testimony or to read any of his prior
> statements into evidence. Id. at 110-16. The
> transcript itself was not admitted into evidence.
> Thus, as the Commonwealth argued to the court at
> trial, questions posed cannot themselves be evidence.
> At the outset of trial, the jury was told they were to
> "consider the testimony of the witnesses from the
> stand and any other exhibits that are admitted into
> evidence. Trial Tr. at 53. The factfinder is
> presumed to follow the law. Strickland, 466 U.S. at
> 695.
>
> Defense counsel argued in his motion to include
> the lesser included offense that the jury had heard
> from both the prosecutor's questions to Kelson and a
> detective's representation to Young during a recorded
> interview that the police believed the killing to be

10

an "accident." Trial Tr. at 210. The Commonwealth responded that defense counsel "can't characterize the questioning of Mr. Dequan Kelson as an adverse witness as non-substantive evidence, then cite it in support of his request for manslaughter instruction," and similarly: "there is no precedent to the effect that a detective's statement to a defendant during an interview, which is clearly intended to elicit a response, constitutes substantive evidence." Id. at 228. The Commonwealth noted that "[i]f the opposite were true, detectives could make declaratory statements in interviews that witnesses could rely on for purposes of conviction." Similarly, attorneys cannot testify by reading a prior witness statement that the witness does not adopt in court. The trial court adopted this reasoning, denying the motion to include a lesser included charge for lack of a "scintilla of evidence" since "obviously, a question to a witness is not evidence." Trial Tr. at 230-31.

Defense counsel's strategy, as stated in the evidentiary hearing and as it can be discerned from a review of the trial transcript, was that the Commonwealth had produced insufficient evidence for a conviction of robbery and a conviction of murder. Following damaging testimony from Jasmine Kirkland, the Commonwealth's witness who testified Young confessed to her that he shot the Chinese food deliveryman, defense counsel moved the court to include an instruction on manslaughter. After the trial court denied the motion, defense counsel emphasized the insufficiency of the Commonwealth's evidence regarding the extent of Young's involvement and intent. While ultimately unsuccessful, one possible sound trial strategy option was to leave doubt in the minds of the jurors as to whether Young had been involved in an accidental killing, rather than either a premeditated murder or a murder committed in the course of attempted robbery.

In determining whether counsel's performance in a given case meets the reasonable competence standard, a court should make every effort "to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." Virginia Dep't. of Corrections v. Clark, 221 Va. 525, 533 (1984) (quoting Strickland, at 688). A court should presume that counsel's conduct is the product of reasonable trial strategy and it is the

petitioner's burden to overcome this presumption.   Id.
Young has failed to meet his burden in this case.
Because this Court finds Young has not satisfied the
performance prong of Strickland, an analysis of the
prejudice prong need not be undertaken.

State Habeas Op. 8-9 (alterations in original).

The Supreme Court has emphasized that "AEDPA erects a
formidable barrier to federal habeas relief for prisoners whose
claims have been adjudicated in state court." Burt v. Titlow,
134 S. Ct. 10, 16 (2013). Specifically, "AEDPA requires 'a
state prisoner [to] show that the state court's ruling on the
claim being presented in federal court was so lacking in
justification that there was an error . . . beyond any
possibility for fairminded disagreement.'" Id. (alteration in
original) (quoting Harrington v. Richter, 562 U.S. 86, 103
(2011). "[T]his standard is difficult to meet . . . because it
was meant to be difficult [to meet]." Harrington, 562 U.S. at
102. Furthermore, "[w]hen a state prisoner asks a federal court
to set aside a sentence due to ineffective assistance of counsel
. . . our cases require that the federal court use a 'doubly
deferential' standard of review that gives both the state court
and the defense attorney the benefit of the doubt." Burt, 134
S. Ct. at 13 (quoting Cullen v. Pinholster, 563 U.S. 170, 190
(2011)). Given the present record and the above standard of
review, Young fails to demonstrate that he is entitled to
relief.

First, it must be noted that Mr. Lassiter's primary defense was not to attempt to reduce Young's criminal culpability by having the jury focus on whether a robbery had or had not occurred. Rather, the defense's primary strategy was that Young had nothing to do with any attempted robbery or murder because Reginald Lee was the murderer and Young was not present at the murder scene. If that defense had succeeded, Young would be a free man.

Second, Mr. Lassiter also was keenly aware that, even without Kelson's grand jury statements, the Circuit Court had concluded sufficient evidence existed to find his client guilty of attempted robbery. Specifically, the evidence indicated that Huang had been shot in the forehead at point blank range. No evidence suggested that Young's murder of Huang was motivated by animus or some other non-pecuniary motive. The evidence also indicated that victim was a delivery man in a high-crime area around midnight.

In denying the motion to strike, the Circuit Court, which was intimately familiar with the criminal activity associated with different areas with Richmond, concluded that given the victim's profession, it was reasonable to infer that murder was motivated by an attempt to rob the victim:

> The motion is denied. The jury is allowed to draw all reasonable inferences from the evidence. There has been testimony that this was a delivery man.

There is testimony that he made his deliveries. We view the [evidence in the light] most favorable to the Commonwealth assuming the [grand jury] statement, as Mr. Lassiter is correct, is not substantive evidence but assuming it had not been made at all, the jury would infer there was a motive for the homicide and there are sufficient facts to infer that from the nature of the victim.

There is no evidence that there was an ongoing dispute between the victim and the defendant. There is no other evidence to infer anything else except an attempted robbery.

(Mar. 18, 2010 207-08.)

After hearing from Mr. Lassiter during the state habeas proceedings, the Circuit Court concluded that the omission of the inconsistent statement instruction was the product of a reasonable strategy from Mr. Lassiter. Specifically, Mr. Lassiter may have hoped that the jury would credit some of the grand jury statements that suggested the firearm had accidently discharged when the victim reached for the gun.[2] Although this testimony would not allow the jury to find Young guilty of manslaughter or benefit Young if he was found guilty of attempted robbery,[3] it could sow doubt and confusion as to

---

[2] Kelson testified before the grand jury that after the victim raised his hands the victim "reached for the gun and the gun got yanked back and the gun went off." (Mar. 18, 2010 Tr. 119-20.)

[3] The jury instruction provided that if jury found that Young had murdered Huang during the course of an attempted robbery, then Young would be found guilty of first degree murder under the felony murder statute. (Mar. 18, 2010 Tr. 235.)

whether Young acted with malice and thus was not guilty of second degree murder.[4]

"[T]here is no expectation that competent counsel will be a flawless strategist or tactician." Harrington, 562 U.S. at 110. With the benefit of hindsight, it appears that the lack of the Inconsistent Statement Instruction did not help Young.   But, "Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.'"   Id. (quoting Strickland, 466 U.S. at 686).   Given the above facts and the "'doubly deferential'" standard of review, Young fails to demonstrate

---

[4] Specifically, the Circuit Court instructed the jury that:

> If you find that the Commonwealth has failed to prove that the defendant killed Qian Huang during the commission of an attempted robbery, but the Commonwealth did prove beyond a reasonable doubt that the defendant killed Qian Huang and that the killing was done with malice, then you shall find the defendant guilty of second degree murder . . . .
> If you find that the Commonwealth has failed to prove beyond a reasonable doubt any of the above elements of this offense as charged, then you shall find the defendant not guilty.
> Malice is the state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification at a time when the mind of the actor is under the control of reason.
> Malice may result from any unjustifiable or unlawful motive including anger, hatred or revenge. Malice may be inferred from any deliberate, willful or cruel act against another, however sudden.
> You may infer malice from the deliberate use of a deadly weapon, unless from all of the evidence you have a reasonable doubt malice existed.

(Mar. 18, 2010 Tr. 235-36 (emphasis added).)

15

that the Circuit Court acted unreasonably in rejecting Claim A
for lack of deficiency.    Burt, 1134 S. Ct. at 13 (quoting
Cullen, 563 U.S. at 190).

Furthermore, Claim A is subject to dismissal because Young
fails to demonstrate prejudice.    "In assessing prejudice under
Strickland, the question is not whether a court can be certain
counsel's performance had no effect on the outcome or whether it
is possible a reasonable doubt might have been established if
counsel acted differently."    Harrington, 562 U.S. at 111
(citations omitted).    "The likelihood of a different result must
be substantial, not just conceivable."    Id. at 112 (citing
Strickland, 466 U.S. at 693).

Young fails to demonstrate that a substantial likelihood of
a different result exists had the Circuit Court provided the
Inconsistent Statement Instruction.    Neither the Circuit Court
nor the attorneys had suggested that the jury could consider the
prosecutor's recitation of a witness's statement before the
grand jury in assessing Young's guilt.    Rather, the Circuit
Court had instructed the jury:

> Your function in the trial of this case is to
> reach a unanimous verdict that's based solely on the
> evidence and the law.    It is your duty to determine
> the facts and reasonable inferences arising from those
> facts.    In so doing, you must not engage in bias,
> guesswork or speculation.    You will consider the
> testimony of the witnesses from the witness stand and
> any other exhibits that are admitted into evidence.

(Mar. 18, 2010 Tr. 52-53.) Additionally, during closing arguments, the prosecutor never referred to witness statements before the grand jury in emphasizing the evidence of Young's guilt. Furthermore, as noted above, the most reasonable inference from the facts of the crime was that the murder was motivated by an attempt to rob Huang. Accordingly, Claim A will be dismissed because Young also fails to demonstrate prejudice.

C. **Claim B**

In Claim B, Young faults counsel for failing "to request voir dire of Daquan Kelson outside of the presence of the jury at the moment the Commonwealth attempted to impeach the witness with grand jury testimony after Kelson testified at trial that he was not present when the shooting took place." (§ 2254 Pet. 28.)

In rejecting this claim, the Circuit Court stated:

In analyzing the performance prong of Strickland, this Court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. 466 U.S. at 690. The Strickland court emphasized "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

Defense counsel testified during the evidentiary hearing before this Court that he was aware he could request voir dire outside the presence of the jury and had previously done so if he had reason to believe a witness would say something that might "inflame" the jury, but so far as he could recall, he did not make

17

the request because he did not believe Kelson would say anything harmful.  Accordingly, ground B should be dismissed.

(State Habeas Op. 9-10.)  The Court agrees that Young fails to demonstrate deficiency, but for reasons slightly different than those stated by the Circuit Court.

Young states that "[w]hen Kelson testified that he was not present when the shooting took place, counsel - at that moment - would have known that Kelson's testimony was that he was not present when the shooting took place!  Thus, counsel was unreasonable in failing to ask that the witness be questioned outside the presence of the jury to avoid tainting the jury with questioning by the Commonwealth."  (§ 2254 Pet. 29 (paragraph numbers omitted).)  Young, however, fails to demonstrate that, under the present circumstances, competent counsel would have understood that he had a right to have any questioning of Kelson take place outside of the presence of the jury.

Young fails to direct the Court to some principle of Virginia law that provides a right under the present circumstances.  The record did not suggest to counsel that Kelson would not have any admissible evidence to offer about the attempted robbery and murder.  To the contrary, prior to denying being present when the delivery man was killed, Kelson admitted that Young was his cousin and that they had frequently spent time together in Whitcomb Court where the murder occurred.

(Mar. 18, 2010 Tr. 106.) Although at trial Kelson denied being in Whitcomb Court when the delivery man was killed, (Mar. 18, 2010 Tr. 107), Kelson acknowledged that he had testified differently before the grand jury and did not want anything bad to happen to Young. (Mar. 18, 2010 Tr. 109-10.)

Given Kelson's relationship to Young and Kelson's refusal to allow his recollection to be refreshed with his grand jury testimony, the Circuit Court permitted the prosecution to treat Kelson as an adverse witness. Virginia law allows a party to impeach his witness by prior inconsistent statements "when the witness whom the party expected to testify favorably has suddenly given unexpected, adverse testimony on the stand." Maxey v. Commonwealth, 495 S.E.2d 536, 539 (Va. Ct. App. 1998) (citation omitted). Given these circumstances, Young fails to demonstrate counsel acted deficiently by not demanding Kelson's questioning take place outside of the presence of the jury. Accordingly, Claim B is subject to dismissal for Young's failure to prove deficiency on the part of counsel. Furthermore, for the reasons set forth above in conjunction with Claim A, Young fails to demonstrate prejudice. Claim B will be dismissed.

## IV.  Conclusion

The Motion to Dismiss (ECF No. 4) will be granted.  The action will be dismissed and the Court will deny a certificate of appealability.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to counsel of record.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  February 14, 2017

20